**Robert J. CREASON, d/b/a Kansas Cartage Company, Appellant,**

**v.**

**AMERICAN BRIDGE, a Division of United States Steel Corporation, Appellee.**

**No. 9324.**

United States Court of Appeals
Tenth Circuit.

Oct. 16, 1967.

---

**3.** See footnote 2, supra.

476

Clyde Christey, Topeka, Kan. (John E. Jandera, Topeka, Kan., on the brief), for appellant.

Byron M. Gray, Topeka, Kan. (Erle W. Francis, Topeka, Kan., on the brief), for appellee.

Before MURRAH, Chief Judge, and JONES* and HILL, Circuit Judges.

HILL, Circuit Judge.

This diversity action was commenced by appellant-plaintiff against appellee-defendant to recover hauling charges computed in accordance with appellant's common carrier certificate and the tariffs filed in connection therewith. The trial court denied appellant his requested relief on the ground that his common carrier's permit did not cover the hauling services rendered. Our question concerns the proper interpretation of the common carrier's permit.

The facts were stipulated and the pertinent ones on appeal are as follows: On November 14, 1961, Creason, doing business as the Kansas Cartage Company, by exchange of correspondence, entered into a contract with American Bridge to haul heavy construction materials "by motor vehicles from rail sidings in or near Wichita, Kansas, and from or to a storage yard in Wichita, Kansas, to, from, or between various missile sites in the vicinity of Wichita, Kansas * *." Creason was to be compensated on the basis of an hourly rental of his equipment. For hauling services performed up to August 23, 1962, Creason billed American Bridge and it paid on the basis of the above mentioned contract provision.

As the hauling job neared completion Creason concluded that he was compelled because of the common carrier's certificate of convenience issued by the Kansas Corporation Commission, the applicable statutes and the tariffs filed by him with the issuing authority, to collect from American Bridge on the basis of the tariffs rather than the contract. Creason billed American Bridge accordingly, it refused to pay and this litigation ensued.

Appellant held his certificate of convenience and necessity as a result of an order of the State Corporation Commission of the State of Kansas transferring

* Of the United States Court of Appeals for the Fifth Circuit, sitting by designation.

the certificate of H. J. Uhl to Robert Creason. The certificate as held by Robert Creason is, of course, subject to all the rights, privileges and limitations contained within the certificate as held by H. J. Uhl. This certificate was first issued to H. J. Uhl in 1937 and was amended upon application to and by order of the Commission in 1943.

Paragraph 6 of the agreed facts says, "It is the position of defendant that the authority of plaintiff under his certificate is limited to hauling from, to, or between oil fields. It is the position of plaintiff that the order extending his authority was intended to and did grant him an authority to haul the described commodities between all points in Kansas unlimited by the restriction in the original certificate. If the Court decides this issue in favor of defendant, the plaintiff cannot recover." The District Court decided this issue for the defendant and entered judgment in favor of the defendant and against plaintiff for costs.

Construction of the 1943 certificate is determinative of the merits of this case, as recognized by both parties. In examining the 1943 certificate it is apparent that the Kansas Corporation Commission treated the 1943 application as an extension of the 1937 certificate for the purpose of amending the commodities that could be carried.[1] Therefore, the 1937 certificate must be examined to determine what limitations, if any, are carried forward by the 1943 extension. As the District Court found, the 1937 certificate clearly limits the holder to hauling between "oil fields and between supply points and oil fields." [2]

■ Appellant argues that the 1943 certificate should be considered separately from the 1937 certificate and that it is error to consider the restrictions found in the 1937 certificate as limiting the 1943 certificate. We do not agree with appellant's proposed method of interpretation. The same rules of construction apply to ascertain the meaning of these certificates as in ascertaining the meaning of any other writing. 73 C.J.S. Public Utilities § 57(c). The Commission's order in 1943 clearly incorporates the 1937 certificate thus necessitating the consideration of the 1937 certificate to determine the scope of the 1943 certificate. Appellant further argues that an inference may be drawn from the commodities listed in the 1943 certificate [3]

1. Exhibit H, Minutes of the Meeting of the State Corporation Commission, June 2, 1943, shows that the subject considered by the Corporation Commission was "for an order extending the certificate of convenience and necessity covering Route 807 (the 1937 certificate), in Docket 17,376, to authorize the transportation of additional commodities. Docket No. 17,376, Route No. 807."

Quoting from the order of the State Corporation Commission granting the extension, Exhibit "J": "This is an application by J. H. Uhl of Wichita, Kansas, for an order extending the certificate of convenience and necessity covering Route 807 in this Docket, to include authority for the transportation of certain additional commodities as specifically set forth and described in the supplemental tariff accompanying the application. The applicant is presently authorized under the certificate herein, to transport oil field machinery, equipment and supplies and heavy machinery used in drilling and exploring for gas, and equipment and supplies used in the construction of the pipeline or pump stations in the petroleum industry. The certificate authorizes the transportation of these commodities from, to, and between all oil fields, oil and gas lease locations or pipeline construction sites in the State of Kansas.

"By this authority the applicant seeks to enlarge the scope of his authority insofar as the commodities authorized to be transported are concerned."

2. From the 1937 order of the Commission Uhl was given " * * * a certificate of convenience and necessity to operate as a motor carrier * * * with the privilege of and restricted to hauling oil field machinery, supplies and materials and heavy machinery, buildings and box cars within and between oil fields and between supply points and oil fields * * *."

3. The commodities listed in the 1943 certificate that could be transported are "airplane parts of all kinds * * *, railway car bodies and parts and also steel rails and girders, as well as heavy

and the people who testified at the 1943 hearing[4] that Uhl intended the certificate to cover haulings between any points in Kansas and not be restricted to haulings between oil fields. There is a degree of merit to this argument; however, the authority of the carrier is established by the orders of the Commission and, as the District Court held, the restrictions which were placed on Uhl's operations in 1937 were never removed and were continued by the 1943 extension.

■■ Appellant also asks this court to examine various tariffs to support his argument that the certificate allowed transportation without limitation. These tariffs, however, were not made a part of the record and are not available for examination by this court on review. Charles v. Judge & Dolph, Ltd., 7 Cir., 263 F.2d 864; Cf. Metropolitan Life Insurance Co. v. Butte, 10 Cir., 333 F.2d 82. Furthermore, there was no request made upon the district judge to consider these tariffs by judicial notice according to K.S.A. 60–409. It would be inappropriate to so consider them on this appeal. The fact would nonetheless remain that the court is limited by the certificate's restrictions and the correct construction of these certificates leads to the same conclusion as the District Court's, i. e., that the certificates were limited to hauling between oil fields and supply points and oil fields.

■ The District Court's third conclusion of law was that "This court lacks the power to modify the orders of the Kansas Corporation Commission, duly made within the scope of the Commission's authority. The orders here were so made. The power to amend or correct such orders rests on statutory authority. K.S.A. 66–118a et seq. Union Pac. Rld. Co. v. Missouri Pac. Rld. Co., 135 Kan. 450, 10 P.2d 893 (1932)." Appellant completely misconstrues this conclusion in urging that it was in error. Appellant evidently felt that the court refused to interpret the certificate because of K.S.A. 66–118a et seq., but such was not the court's holding. Rather the court was saying that an exclusive statutory method existed to modify the Commission's orders. Since it interpreted the certificate as being restricted it would have required a change in the certificate to give it the scope appellant desired and the District Court correctly held it was barred by K.S.A. 66–118a et seq. from making such a modification.

■ Appellant finally urges that even though the trial court did determine he was not entitled to recover under his common carrier tariffs, a judgment should have been entered in his favor in the amount of the hauling charges unpaid under the contract. The complaint makes no reference to the hauling contract but American Bridge, by its answer, asserted that the sum of $2,130.00 was due under a hauling contract and offered to pay that amount. We find nothing in the record prior to the entry of judgment to indicate that Creason agreed with American Bridge's $2,130.00 computation. Thus, insofar as the record shows, a factual controversy existed as to the amount due. The

---

wooden girders and piling. * * * [F]abricated or portable houses or buildings * * * heavy grading and road making implements or machinery, baking machinery and equipment, electrical generators, motor condensers, transformers and other electrical equipment including engines, either steam or internal combustion, stationary or portable, including tractors, other than farm tractors, and any and all other heavy machinery used by road contractors, bridge builders, or house movers."

4. Appellant argues that many of the people who testified at the 1943 hearing were not connected with oil field operations and thus would not be interested in testifying before the hearing if the certificate only were limited to transporting between oil fields. These witnesses were J. H. Lampson, Wichita, Kansas, who was the traffic manager of Beech Aircraft Company; Mr. Edwards, who was the manager of the Gas and Electric Company, at Newton, Kansas; Mr. L. E. Robinson, Wichita, Kansas, employed by Wichita International Harvester Company.

stipulation did not resolve the controversy, it was not a triable issue under the pleadings and stipulated facts and no alternative claim was made by Creason in this regard until after the judgment in the case had been entered. It was then asserted in a vague fashion by the Motion for a New Trial that the court should grant judgment for the sum appellee admitted owing but even there appellant did not say that the sum of $2,130.00 was the correct amount due, thus eliminating any factual differences as to the correct amount due.

If appellant is entitled to a judgment in the amount due under the hauling contract, it would be pursuant to Rule 54(c),[5] although such rule was not cited in appellant's brief. We are cognizant of the import of the rule but do not believe, under the facts presented here, that it was applicable. We conclude that the trial court did not err in refusing to render an alternative judgment in favor of appellant in the amount of the hauling charges due under the contract.

Affirmed.

---

5. Rule 54(c) reads in pertinent part:
   "Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."